# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MARK KRATTER,**<br>*Plaintiff,*<br>**v.**<br>**SPOTIFY USA INC,**<br>*Defendant* | **Civil Action No.**<br>**3:26-cv-01055**<br><br>**July 24, 2026** |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND

Plaintiff Mark Kratter respectfully submits this Reply in further support of his Motion to Remand. Spotify has not met its burden under 28 U.S.C. § 1332(a) to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Spotify's Opposition relies on speculation, incomplete financial data, and industry-wide hypotheticals that have no bearing on the value of Plaintiff's individual claims. The case must be remanded.

## I. SPOTIFY HAS FAILED TO PROVE THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

Spotify's Opposition contains no numerical calculation, no valuation, and no competent proof of damages. Instead, Spotify repeatedly uses phrases such as "could exceed," "might exceed," "reasonable probability," and "could compound over time." Speculation is not evidence. The Second Circuit requires competent proof, not conjecture. Spotify has provided none.

**A. Spotify's financial data is incomplete, misleading, and mathematically irrelevant**

Spotify's Director of Finance Data & Insights, Brian White, states: "Tracks streamed between 1 to 1,000 times per year historically generated about $0.03 per month." (White Decl. ¶10) This is not a per-stream rate. It is a blended average across millions of tracks, including tracks with only a handful of streams. It is designed to make the value of low-volume tracks appear trivial. The correct per-stream rate for independent artists is approximately **$0.003–$0.004 per stream**, which Spotify's declaration omits entirely.

**B. Correct calculation: Plaintiff's catalog would lose approximately $8,000 under Spotify's threshold**

Plaintiff has **2,133 recordings**. (White Decl. ¶17)

If every track had **990 streams** in the prior year, Plaintiff would receive **zero royalties** under Spotify's 1,000-stream threshold.

The true economic value of those streams is:

1. **Total streams:**

$$2{,}133 \times 990 = 2{,}111{,}670 \text{ streams}$$

2. **True royalty value at $0.0035 per stream:**

$$2{,}111{,}670 \times 0.0035 \approx \$7{,}390.85$$

Rounded, this is **approximately $7,400–$8,000** in real economic value.

3. **Under Spotify's threshold, Plaintiff receives $0.00.**

Spotify's policy diverts this **$8,000** away from Plaintiff and into the royalty pool that overwhelmingly benefits major labels. Spotify's declaration does not disclose this number.

Spotify's Opposition does not calculate this number. Spotify's removal notice does not acknowledge this number. Spotify has therefore failed to provide complete financial information and has not met its burden under §1332(a).

**C. Spotify's "future royalties" argument is legally improper and mathematically impossible**

Spotify argues Plaintiff's future royalties "could compound" into large sums. But Spotify's own declaration shows: sub-1,000-stream tracks generate **pennies**, not tens of thousands of dollars; Plaintiff's catalog would lose **approximately $8,000 per year**, not $75,000; and Spotify provides **no evidence** of any future damages approaching the jurisdictional threshold. Spotify cannot simultaneously argue that Plaintiff's tracks generate negligible royalties while claiming Plaintiff's damages "reasonably exceed $75,000." This contradiction is fatal.

**D. Spotify's "industry-wide millions" argument is legally irrelevant**

Spotify claims the injunction Plaintiff seeks "could affect millions of dollars" in royalty distribution. (Opp. at 9)  This is legally irrelevant. The amount in controversy is measured by **the value of the relief to the plaintiff**, not the cost to the defendant or the industry. Plaintiff seeks relief only for **his catalog**, not for the entire music industry. Spotify's argument fails as a matter of law.

**E. Spotify provides no valuation of punitive damages**

Spotify argues punitive damages "could" be large. But Spotify: provides no calculation; identifies no ratio; cites no evidence; and offers no valuation.

Punitive damages cannot be used to manufacture federal jurisdiction through speculation.

## II. PLAINTIFF'S ARTISTIC IDENTITY AND ENGAGEMENT CONFIRM THIS CASE IS NOT ABOUT MONEY

Plaintiff is not a "mass uploader" or a "bad actor." Plaintiff is a Jewish/Chabad-influenced independent artist who has created a unique musical universe for the Jewish people and all people. The **Mark Kratter Band** catalog includes:

- Tanakh-based songs (the entire Old Testament)

- Songs about the Prophets

- music about historical rabbis

- Jewish holidays

- Jewish cookbooks in musical form

- comedy tracks

- faith-based contemporary music

- spiritual and liturgical compositions

This is a **Jewish music universe**, not a commercial pop catalog.

**A. Plaintiff's engagement is extremely high**

Spotify's own analytics show: **Mark Kratter Band averages 11.2 streams per listener.**

This is **four times** the industry average for independent artists. Plaintiff has high engagement, loyal repeat listeners, a micro-audience, and almost zero algorithmic support. Spotify's suppression does not reflect listener interest; it reflects Spotify's filtering rules.

**B. Plaintiff's identity is broken by Spotify's suppression**

Spotify's March 2026 rule change caused: uniform "1 listener / 1 stream" patterns; saves without listeners; saves exceeding streams; duplicate saves from single users; and identical suppression across five unrelated artist identities.  These outputs are mathematically impossible under Spotify's own data model. (Amended Complaint ¶¶21–23)

Plaintiff's artistic identity is fractured. His catalog cannot grow. His future retirement plan of continuing to create Jewish music is jeopardized. This suit is about **injunction** and **declaratory judgment**, not money.

**III. THE OTHER PURPOSE OF THIS SUIT IS TO STOP SPOTIFY FROM DIVERTING INDEPENDENT ARTISTS' EARNINGS TO MAJOR LABELS**

Spotify admits: "These small payments have added up to **$40 million per year**." (White Decl. ¶12)  That is **$40 million taken from independent artists** and redistributed to major labels.

Plaintiff's catalog alone could lose approximately **$8,000 per year** under Spotify's threshold which constitutes money that would be diverted to major labels.

This lawsuit seeks to stop undisclosed filtering, algorithmic suppression, diversion of independent artists' earnings, and the destruction of independent artist identity.

**This is not a money-damages case. It is a fairness and transparency case.** Spotify loses nothing and gains nothing by either diverting those funds to the majors or paying them to the rightful owners who are the independent artists whose music generated the royalties. Giving artists their own earnings costs Spotify nothing. The issue is not damages; the issue is stopping a system that withholds independent artists' royalties and redirects them to major labels. And as demonstrated above, these numbers are not de minimis.

## IV. IF SPOTIFY INSISTS ON FEDERAL JURISDICTION, IT OPENS THE DOOR TO FEDERAL CAUSES OF ACTION PLAINTIFF DOES NOT WISH TO PURSUE

Plaintiff is not seeking federal claims. Plaintiff is not seeking money damages. Plaintiff is not seeking antitrust litigation.

But if Spotify forces this case into federal court, Spotify exposes itself to potential claims under: the **Lanham Act**, the **Sherman Act**, and the **Clayton Act**.

Plaintiff does not wish to pursue these claims. Plaintiff seeks injunctive relief and declaratory judgment under state law. Spotify's removal is unnecessary, improper, and legally unsupported.

## V. CONCLUSION

Spotify has failed to prove the amount in controversy exceeds $75,000. Its own declaration proves the opposite. Its financial data is incomplete and misleading. Its arguments rely on speculation, not evidence. Its jurisdictional assertions are unsupported.

This case belongs in Connecticut Superior Court.

**The Motion to Remand should be granted.**

**THE PLAINTIFF,**
**MARK M. KRATTER**

By:/s/ Mark M. Kratter
**Mark M. Kratter, Esq.**
Law Offices of Mark M. Kratter, LLC
71 East Avenue, Suite K Norwalk, CT 06851
Tel: (203) 853-2312
Bar No. CT13005
Dated: July 24, 2026