**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARK KRATTER,<br>Plaintiff,<br><br>v.<br><br>SPOTIFY USA INC.,<br>Defendant. | No. 3:26-cv-1055 (SRU) |

# ORDER ON MOTION TO REMAND

Plaintiff Mark Kratter ("Kratter") sued defendant Spotify USA Inc. ("Spotify") in Connecticut state court based on Connecticut state law claims stemming from Spotify's alleged March 2026 rule change. *See generally* Doc. Nos. 1-1, 1-4. Spotify removed the lawsuit to this court pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446. Doc. No. 1 at 1.

Kratter moved to remand the case to state court arguing Spotify's removal is improper because his requested relief does not meet the $75,000 jurisdictional threshold. *See generally* Doc. Nos. 4, 12. Spotify opposes Kratter's motion to remand, contending the amount in controversy exceeds $75,000. *See generally* Doc. No. 19.

For the following reasons, I **deny** Kratter's amended motion to remand, doc. no. 12, and **deny as moot** Kratter's initial motion to remand, doc. no. 4.

## I. Background

### A. Factual History

Kratter "is an independent music creator and attorney residing in Norwalk, Connecticut." Doc. No. 1-4 ¶ 5. He distributes his musical catalog through Spotify's platform "pursuant to Spotify's applicable Terms of Service and Distributer Agreement (collectively, the 'Agreement')." *Id.* ¶ 8. His catalog "exceeds 1,900 recorded songs . . . spanning multiple genres

including Jewish spiritual music, inspiration rap, faith-based contemporary music, and related genres." *Id.* ¶ 9. Kratter distributes music under five "distinct Spotify artist identities: (a) Mark Kratter Band; (b) Menachem Kratter Band; (c) RapsterKratter (d) KratterVision; and (e) Mark Michaels Messiah Band (collectively, the 'Artist Identities')." *Id.* ¶ 10.

Kratter's primary contention is that:

> In or about March 2026, Spotify implemented a change to its streaming, recommendation, and reporting systems (the "March 2026 Rule Change") that caused large categories of legitimate plays of [Kratter's] tracks not to be counted as streams and caused [Kratter's] listener and stream statistics to collapse to levels inconsistent with any organic audience behavior.

Doc. No. 1-4 ¶ 16. Kratter contends that the March 2026 Rule Change now excludes "passive listening sessions, algorithmic Radio plays, Autoplay sessions, and low-interaction streaming contexts" from streams that are credited to an artist's performance metrics. *Id.* ¶ 17. Immediately after the Mach 2026 Rule Change, performance data for Kratter's Artist Identities "underwent a sudden, simultaneous, and systemic collapse." *Id.* ¶ 20.

Kratter argues that, after the March 2026 Rule Change, Spotify now "artificially depresses [his] performance metrics" and "plac[es] him at a permanent algorithmic disadvantage that compounds over time." *Id.* ¶ 32. Now, Kratter's "tracks are less likely to [surface] in Spotify's discovery systems, which reduces his algorithmic exposure to effectively zero, suppresses future growth, and causes ongoing and measurable economic harm in the form of lost streams, lost listeners, and reduced royalty income." *Id.* ¶ 33.

Kratter alleges that "multiple tracks with legitimate listener engagement failed to reach the 1,000-stream threshold . . . because Spotify's undisclosed filtering practices suppressed the counted streams." *Id.* ¶ 34. Further, he asserts that the March 2026 Rule Change effectively redistributes Kratter's and other independent artists' "discovery and algorithmic placement" to

"major-label artists." *Id.* ¶ 36. That "diversion of discovery and revenue constitutes a direct, measurable, and unfair economic injury to [Kratter]." *Id.* ¶ 37.

Kratter brings five claims against Spotify: (1) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"); (2) unjust enrichment; (3) declaratory judgment; (4) breach of contract; and (5) breach of implied covenant of good faith and fair dealing. Doc. No. 1-4 at 16-22.

He requests the following relief: (1) actual, compensatory, statutory, and punitive damages; (2) restitution; (3) a "declaratory judgment that Spotify's undisclosed filtering practices and 1,000-stream threshold constitute unfair and deceptive practices under Connecticut law and a material breach of the operative Agreement;" (4) "injunctive relief prohibiting Spotify from engaging in undisclosed filtering practices and unfair payout thresholds as applied to [Kratter's] catalog;" (5) an order requiring "Spotify to provide a full accounting of all filtered streams, engagement signals, algorithmic sessions, and discovery allocations affecting [Kratter's] catalog across all [his] Artist Identities since March 2026;" (6) an order requiring "Spotify to provide full judicial discovery of its internal algorithmic systems, backend data logs, engineering records, and rule-change documentation pertaining to the March 2026 Rule Change;" and (7) attorney's fees and costs. *Id.* at 23.

B. <u>Procedural History</u>

Kratter filed his complaint in the Connecticut Superior Court of the Judicial District of Stamford at Stamford on May 28, 2026. *See generally* Doc. No. 1-1. Additionally, he filed a motion for a temporary injunction on May 28, 2026. *Id.* at 12-13. He filed his amended complaint, a second motion for a temporary injunction, and a motion for expedited discovery in Connecticut Superior court on June 26, 2026. *See generally* Doc. Nos. 1-4, 1-5, 1-6.

Spotify removed Kratter's suit to this court on July 1, 2026. Doc. No. 1. Kratter filed both an initial and an amended motion to remand the case to state court on July 2, 2026.[1] Doc. Nos. 4, 12. Spotify filed an opposition to Kratter's motion to remand on July 23, 2026. Doc. No. 19. Kratter filed a reply on July 24, 2026. Doc. No. 20.

## II. Standard of Review

District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

"The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b)(1). "[T]he sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). However, "the notice of removal may assert the amount in controversy if the initial pleading seeks . . . nonmonetary relief" or "a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." 28 U.S.C. § 1446(c)(2)(A). If the notice of removal asserts the amount in controversy pursuant to section 1446(c)(2)(A), then

[1] For clarity's sake, I refer to Kratter's amended motion to remand, doc. no. 12, as his "motion to remand" throughout this ruling.

removal is proper "if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds" $75,000. 28 U.S.C. § 1446(c)(2)(B).

Even if federal jurisdiction exists over the removed case, a plaintiff may challenge the propriety of removal based on procedural defects and move to remand a case to state court "within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). *See also Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("[S]tatutory procedures for removal are to be strictly construed."). The statutory time limit is "mandatory" and, absent waiver or estoppel, "rigorously enforce[d]." *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991).

"A party invoking the jurisdiction of the federal court has the burden of proving" there is a "reasonable probability that the claim [exceeds] the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (internal quotation marks omitted). When the jurisdictional facts are challenged, "the party asserting jurisdiction must support those facts with competent proof and justify its allegations by a preponderance of evidence." *Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 197 (D. Conn. 2004) (internal citations and quotation marks omitted) (alterations adopted). "Where the pleadings themselves are inconclusive as to the amount in controversy, . . . federal courts may look outside those pleadings to other evidence in the record." *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994).

## III. Discussion

In his motion to remand, Kratter argues that Spotify cannot "establish that the amount in controversy exceeds $75,000" and that Spotify's removal "mischaracterizes the structure of the claims and ignores the controlling jurisdictional standards." Doc. No. 12 at 1. Spotify opposes Kratter's motion to remand, arguing that Kratter's "allegations about his supposed losses, alone, make it reasonably probable that the amount in controversy exceeds the statutory threshold." Doc. No. 19 at 6. Further, Spotify contends that Kratter's requested remedies of declaratory and injunctive relief "count toward the amount in controversy." *Id.* at 7.

I deny Kratter's amended motion to remand because the aggregate value of the monetary and nonmonetary relief he requests will likely exceed $75,000.[2] Additionally, I decline to award attorneys' fees.

### A. Whether the amount in controversy exceeds $75,000

Kratter argues that the amount in controversy does not exceed $75,000 because he seeks primarily injunctive and declaratory relief, and the state-law damages claims "are ancillary, unquantified, and insufficient to satisfy the jurisdictional threshold." Doc. No. 12 at 4. Spotify asserts that Kratter's requested relief takes "his claims well above the statutory threshold" by pointing to Kratter's claims for compensatory damages, punitive damages, and equitable relief. Doc. No. 19 at 10, 14.

"[T]he notice of removal may assert the amount in controversy if the initial pleading seeks . . . nonmonetary relief[,] or . . . the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." 28 U.S.C. §

[2] The parties do not dispute that they are diverse. *See* Doc. No. 12 at 5 (assuming diversity of citizenship); Doc. No. 19 at 6 ("[Kratter] concedes that there is diversity of citizenship . . . ."); Doc. No. 20 (failing to dispute that the parties are not diverse). *See also* Doc. No. 1-4 ¶ 5 (stating Kratter resides in Norwalk, Connecticut), ¶ 6 ("[Spotify] is a Delaware corporation with its principal place of business in New York, New York . . . .").

1446(c)(2)(A). Courts "aggregate claims for damages and injunctive or declaratory relief for [the] purposes of calculating the amount in controversy." *Speer v. Deutsche Bank Nat'l Tr. Co.*, 2024 WL 340777, at *2 (D. Conn. Jan. 30, 2024). *See also Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) ("[A] plaintiff is permitted to aggregate claims . . . to satisfy the amount in controversy requirement.).

When a plaintiff seeks money damages in a Connecticut state court action, the plaintiff must set forth whether their demand is: (1) $15,000 or more; (2) between $2,500 and less than $15,000; or (3) less than $2,500. Conn. Gen. Stat. § 52-91. *See also Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 197 (D. Conn. 2004) ("Connecticut does not require a plaintiff to state the precise amount sought in the litigation . . . .").

Although Kratter requests actual, compensatory, statutory, and punitive damages in his complaint, neither his amended complaint nor any of his filings request a specific amount of monetary damages.[3] *See, e.g.,* Doc. No. 1-2 (checking box on civil summons form indicating the amount in demand is over $2,500); Doc. No. 1-4 (failing to specify the amount in demand according to section 52-91). Additionally, Kratter seeks injunctive and declaratory relief. Doc. No. 1-4 at 23.

Accordingly, I must determine whether the aggregate value of Kratter's claims for relief satisfies the amount in controversy requirement.

1. *Whether the aggregate value of Kratter's requested relief exceeds $75,000*

The amount in controversy "claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 288 (1938).

[3] Kratter lists his "ascertainable loss" as: "loss of counted streams; loss of discovery and algorithmic placement; loss of royalty-bearing revenue; and diversion of discovery and revenue to major-label artists." Doc. No. 1-4 ¶ 41.

Notably, even where a plaintiff's allegations "leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982). "Rather, it must appear to a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke federal jurisdiction." *Id. See also St. Paul Mercury Indem. Co.*, 303 U.S. at 289 ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

Courts may consider punitive damages and future damages in determining the amount in controversy. *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) ("[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied."); *Dill v. Ron's Golf Car Rental, Inc.*, 2013 WL 3716382, at *4 (D. Conn. July 12, 2013) (considering "the claims for immediate future lost wages in determining the amount in controversy"). Punitive damage awards can be many times larger than compensatory damage awards. *See, e.g., Murillo v. A Better Way Wholesale Autos, Inc.*, 2019 WL 3081062, at *7 (D. Conn. July 15, 2019) (upholding an arbitrator's punitive damages award of twenty-five times the contractual damages).

The Connecticut Unfair Trade Practices Act ("CUTPA") unambiguously allows plaintiffs to seek punitive damages. Conn. Gen. Stat. § 42-110g ("The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."). "While the CUTPA statutes do not provide a method for determining punitive damages, courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages." *Advanced Fin. Servs., Inc. v. Associated Appraisal Servs., Inc.*, 79 Conn. App. 22, 34 (2003) (internal quotation marks omitted) (quoting *Perkins v. Colonial Cemeteries, Inc.*, 53 Conn. App. 646, 649 (1999). *See also Ulbrich v. Groth*, 310 Conn. 375, 454 (2013) (declining to

place a cap on punitive damages awarded in CUTPA claims). Moreover, courts can award punitive damages under CUTPA "even when the plaintiff has failed to show any actual damages flowing from that violation." *Larobina v. Home Depot, USA, Inc.*, 76 Conn. App. 586, 598 (2003).

When a plaintiff seeks equitable relief such as a declaratory judgment or injunction, "the amount in controversy is measured by the value of the object of the litigation." *Washington Nat'l Ins. v. OBEX Grp. LLC*, 958 F.3d 126, 135 (2d Cir. 2020) (internal quotation marks omitted) (quoting *DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271, 276 (2d Cir. 2006). *See also Beacon Const. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.").

The monetary value of nonmonetary relief "is calculated from the plaintiff's standpoint." *Kheel v. Port of New York Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) (calculating the amount in controversy based on the value of the suit's intended benefit, the value of the right protected, or the value of the injury averted). Courts generally evaluate claims for injunctive relief based on the right the plaintiff "seeks to protect" and "the extent of the impairment to be prevented." *A.F.A. Tours, Inc.*, 937 F.2d at 87. "In calculating that impairment, the court may look not only at past losses but also at potential harm." *Id.* at 88.

Kratter repeatedly avers that his suit is about injunctive and declaratory relief, not money. Doc. No. 20 at 4, 6 (arguing Spotify "loses nothing and gains nothing" by changing which artists receive royalties). He also argues that the amount in controversy is measured by the "value of the relief to [him]," and that he "seeks relief only for his catalog, not for the entire music industry." Doc. No. 20 at 3 (emphasis omitted).

Spotify contends that "the value of the object of the litigation" is "the amount implicated by declaring unlawful . . . Spotify's 'stream-filtering' practices and the long-standing, publicly disclosed policy under which only tracks that have accrued 1,000 streams or more in the preceding 12 months generate sound recording royalties." *DiTolla*, 469 F.3d at 276; Doc. No. 19 at 14. Further, Spotify asserts that "[d]eclaring those practices unlawful could affect the administration and distribution of millions of dollars in sound recording royalties annually." Doc. No. 19 at 14.

In his reply, Kratter states his catalogue "would lose approximately $8,000 per year under Spotify's [1,000-stream] threshold." Doc. No. 20 at 1-3 (calculating the "true economic value" of the streams and the "true royalty value" based on the assumption that each of Kratter's 2,133 recordings receives 990 streams and that each stream earns .0035 dollars). Assuming Kratter's calculations are made in good faith, his estimate of "$7,400-$8,000" in compensatory damages controls. *St. Paul Mercury Indem. Co*, 303 U.S. at 288. However, that estimate does not include Kratter's requested statutory and punitive damages under CUTPA. Doc. No. 1-4 at 23. Further, Kratter's calculation does not include his monetary loss compounded over future years due to Spotify's alleged rule change. Doc. No. 20 at 5 (asserting that Kratter's "future retirement plan of continuing to create Jewish music is jeopardized"); Doc. No. 1-4 at 43 ¶ 11 (averring that Kratter "suffer[s] ongoing economic harm" that "is compounding daily").

Along with his claimed damages, Kratter seeks a declaratory judgment "that Spotify's undisclosed filtering practices and 1,000-stream threshold constitute unfair and deceptive practices under Connecticut law and a material breach of the operative Agreement." Doc. No. 1-4 at 23. Kratter also pursues several forms of injunctive relief, including: preventing Spotify from "engaging in undisclosed filtering practices and unfair payout thresholds" as applied to his

catalog; ordering Spotify to account for "all filtered streams, engagement signals, algorithmic sessions, and discovery allocations affecting [Kratter's] catalog . . . since March 2026;" and ordering Spotify "to provide full judicial discovery of its internal algorithmic systems, backend data logs, engineering records, and rule change documentation pertaining to the March 2026 Rule Change." *Id.*

It is far from "a legal certainty" that Kratter's amended complaint cannot surpass the $75,000 jurisdictional threshold, particularly considering his claim for punitive damages under CUTPA and his requests for equitable relief. *Zacharia*, 684 F.2d at 202.

Kratter's lawsuit seeks to "stop undisclosed filtering, algorithmic suppression, diversion of independent artists' earnings, and the destruction of independent artist identity." Doc. No. 20 at 6. *See generally* Doc. No. 1-4 at 16-23. Specifically, Kratter's suit intends to disrupt Spotify's alleged redistribution of 40 million dollars in earnings from independent artists to major labels. Doc. No. 20 at 5. If Kratter successfully proves that Spotify's filtering practices and 1,000 stream threshold are unlawful, then his requested relief will almost certainly impact Spotify's engagement with other artists. *Cf. A.F.A. Tours, Inc.*, 937 F.2d at 89 (2d Cir. 1991) (noting that the "requested injunctive relief" could have a broader impact than expressly contemplated while discussing whether the plaintiff's claims exceeded the jurisdictional threshold). Kratter explicitly contemplates his claims' far-reaching consequences: "[T]he issue is stopping a system that withholds independent artists' royalties and redirects them to major labels. . . . [A]s demonstrated above, these numbers are not de minimis." Doc. No. 20 at 6.

Spotify establishes by a preponderance of the evidence that Kratter's requests for damages, declaratory relief, and injunctive relief exceed $75,000. *See Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994); *Vermande v. Hyundai Motor Am., Inc.*,

352 F. Supp. 2d 195, 197 (D. Conn. 2004). I cannot conclude to a "legal certainty" that Kratter's complaint will not allow him to "recover sufficient damages to invoke federal jurisdiction." *St. Paul Mercury Indem. Co.*, 303 U.S. at 289. Therefore, I **deny** Kratter's motion to remand, doc. no. 12, and **deny as moot** Kratter's initial motion to remand, doc. no. 4.

B. Whether attorneys' fees are warranted

Under 28 U.S.C § 1447(c), a federal district court may impose attorneys' fees and costs on a party who improperly removes a case to federal court. Imposition of fees is within the discretion of the district court. "Absent unusual circumstances, courts may award attorney's fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "'[I]f clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees,' and 'district court decisions, let alone conflicting district court decisions, do not render the law clearly established.'" *Williams v. Int'l Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011) (alterations adopted) (quoting *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007)).

I exercise my discretion to deny Kratter's request for an award of attorneys' fees. Doc. No. 12 at 5-6. Spotify did not lack an objectively reasonable basis to remove Kratter's lawsuit, and clearly established law did not foreclose Spotify's basis for removal. *Martin*, 546 U.S. at 141; *Williams*, 416 F. App'x at 99.

## IV. Conclusion

For the above reasons, Kratter's amended motion to remand, doc. no. 12, is **denied** and his initial motion to remand, doc. no. 4, is **denied as moot**.

So ordered.

Dated at Bridgeport, Connecticut, this 19th day of August 2026.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge