# EXHIBIT E

**DOCKET #: FST-CV26-6081436-S**

**MARK KRATTER,**
**Plaintiff**

**v.**

**SPOTIFY USA INC.,**
**Defendant**

**SUPERIOR COURT**

**JUDICIAL DISTRICT OF**

**STAMFORD AT STAMFORD**

**JUNE 26, 2026**

## PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION

Plaintiff moves for a temporary injunction pursuant to Conn. Gen. Stat. § 52-471 to restrain Defendant Spotify USA Inc. from continuing to apply undisclosed filtering rules and the 1,000-stream royalty threshold in a manner that suppresses Plaintiff's counted streams, discovery placement, and royalty-bearing activity across all four of Plaintiff's Artist Identities.

### I. Legal Standard

A temporary injunction is appropriate where the movant demonstrates: (1) likelihood of success on the merits; (2) irreparable harm absent relief; (3) no adequate remedy at law; and (4) a balance of equities favoring relief. Olcott v. Pendleton , 128 Conn. 292, 295 (1941).

### II. Argument

**A. Likelihood of Success on the Merits**

Plaintiff is likely to prevail on his CUTPA and contract claims. Spotify implemented a March 2026 Rule Change that caused the systematic suppression of Plaintiff's counted streams across all four Artist Identities. The suppression is evidenced by CSV data containing mathematically impossible outputs — including tracks reporting saves from zero listeners, duplicate saves from single listeners, and aggregate save counts exceeding total stream counts. These impossibilities are not statistical anomalies; they are logical contradictions in Spotify's own exported data. Spotify simultaneously confirms Plaintiff's legitimacy through its own platform features — the "This Is Mark Kratter Band" editorial playlist and a dedicated Spotify Radio station — while its reporting system produces data that contradicts those very features. This contradiction is precisely the kind of unfair and deceptive conduct CUTPA is designed to remedy.

**B. Irreparable Harm**

Plaintiff is suffering ongoing harm that cannot be fully remedied by money alone: loss of algorithmic momentum; permanent collapse of discovery placement; degradation of catalog growth trajectories; and an irreversible competitive disadvantage relative to major-label artists who benefit from Spotify's redistribution of suppressed independent artist metrics. Algorithmic suppression creates compounding, long-term damage that cannot be retroactively restored. Each additional day that Spotify's filtering rules operate against Plaintiff's catalog represents an additional and unrecoverable quantum of harm.

**C. No Adequate Remedy at Law**

Once algorithmic discovery placement collapses, it cannot be recreated by monetary damages. The audience growth, playlist placement, and listener engagement that Plaintiff has lost cannot be reconstructed through any monetary award because the algorithmic window that should have captured that growth has passed. The harm is ongoing, compounding, and beyond monetary restoration.

**D. Balance of Equities**

Spotify faces no material harm from transparent and accurate stream counting. It faces no operational burden from disclosing the criteria it already applies. Plaintiff faces ongoing daily suppression and quantifiable economic injury. The balance plainly favors relief.

**III. Requested Relief**

Plaintiff requests that the Court temporarily enjoin Spotify from: (1) applying undisclosed filtering rules to Plaintiff's catalog across all four Artist Identities; (2) applying the 1,000-stream royalty threshold to Plaintiff's catalog in a manner that excludes legitimately generated streams suppressed by Spotify's filtering rules; (3) failing to count legitimate streams, saves, playlist additions, and algorithmic sessions generated by Plaintiff's catalog; and (4) failing to disclose the criteria used to filter, discount, or exclude streams and engagement signals.

The Plaintiff,
MARK M. KRATTER

______________________________
Mark M. Kratter, Esq.
Law Offices of Mark M. Kratter, LLC
71 East Avenue, Suite K Norwalk, CT 06851
Tel: (203) 853-2312 Bar No. 423850
DATED: June 22, 2026

DOCKET #: FST-CV26-6081436-S

MARK KRATTER,
Plaintiff

v.

SPOTIFY USA INC.,
Defendant

SUPERIOR COURT

JUDICIAL DISTRICT OF

STAMFORD AT STAMFORD

JUNE 26, 2026

**[Proposed] Order on Plaintiff's Motion for Temporary Injunction**

The Court, having reviewed Plaintiff's First Amended Complaint, Motion for Temporary Injunction, supporting affidavit, and the full record, and having found that: (1) Plaintiff has demonstrated a likelihood of success on the merits of his CUTPA and contract claims; (2) Plaintiff will suffer irreparable harm absent injunctive relief; (3) Plaintiff has no adequate remedy at law with respect to the ongoing algorithmic suppression; and (4) the balance of equities favors the issuance of injunctive relief;

IT IS HEREBY ORDERED that, pending final judgment in this matter, Defendant Spotify USA Inc. is temporarily enjoined from:

Applying undisclosed filtering rules to Plaintiff's catalog across any of Plaintiff's four Artist Identities: Mark Kratter Band, Menachem Kratter Band, RapsterKratter, and Mark Michaels Messiah Band;

Applying the 1,000-stream royalty threshold to Plaintiff's catalog in a manner that excludes streams suppressed by Spotify's own filtering rules;

Failing to count legitimate streams, saves, playlist additions, and algorithmic sessions associated with Plaintiff's tracks; and

Failing to disclose to Plaintiff the criteria, formulas, or rules used to filter, discount, or exclude streams, engagement signals, or algorithmic sessions.

IT IS FURTHER ORDERED that Spotify shall, within thirty (30) days of this Order, provide Plaintiff with: (a) a full accounting of all filtered or discounted streams affecting Plaintiff's catalog across all four Artist Identities since March 2026; (b) a full accounting of all engagement signals — including saves, playlist additions, replays, Radio plays, Autoplay sessions, and algorithmic sessions recorded but not counted; and (c) a written explanation of all filtering criteria applied to Plaintiff's tracks since March 2026.

So ordered this day of , 2026, at Stamford, Connecticut.

______________________________________

Judge of the Superior Court/TAC/Clerk

DOCKET #: FST-CV26-6081436-S

MARK KRATTER,
Plaintiff

v.

SPOTIFY USA INC.,
Defendant

SUPERIOR COURT

JUDICIAL DISTRICT OF

STAMFORD AT STAMFORD

JUNE 26, 2026

**Affidavit of Mark Kratter in Support of First Amended Complaint and Motion for Temporary Injunction**

I, Mark Kratter, being duly sworn, hereby depose and state as follows:

1. I am the Plaintiff in the above-captioned action and submit this affidavit in support of my First Amended Complaint and Motion for Temporary Injunction. I have personal knowledge of all facts stated herein.
2. I am an independent music creator residing in Norwalk, Connecticut. I have released more than 1,900 tracks across four Spotify artist identities: Mark Kratter Band, Menachem Kratter Band, RapsterKratter, and Mark Michaels Messiah Band.
3. Prior to March 2026, my Spotify performance across all four Artist Identities was stable and consistent. My CSV data for the January through February 2026 period showed 4,066 streams in 28 days, a streams-per-listener ratio of 9.3, normal statistical variance, genuine catalog drift across more than 200 songs, and listener saves on emotionally resonant tracks. This was consistent, real audience behavior.
4. Spotify's platform has generated both a "This Is Mark Kratter Band" editorial playlist and a dedicated Spotify Radio station for my Mark Kratter Band artist identity. I understand from Spotify's platform documentation that these features are generated exclusively for artists with verified listener behavior, multi-track

engagement, and algorithmic catalog identity recognition. Spotify does not generate these features for artists with fraudulent or insufficient engagement.

5. Immediately after Spotify's March 2026 Rule Change, my CSV data across all four Artist Identities showed a sudden and systemic collapse into uniform, non-varying patterns of 1 listener and 1 stream per track, with zero or near-zero saves across entire catalogs — a pattern I recognized as inconsistent with any real human listening behavior.

6. My CSV exports contain data points that I believe to be physically impossible under Spotify's own data model. Specifically: the track "Hashem Lights the Arcade" (Menachem Kratter Band) shows 0 listeners, 0 streams, and 2 saves — impossible because a save requires a listener and a stream. Multiple Menachem Kratter Band tracks show 1 listener and 2 saves — impossible because Spotify does not permit duplicate saves by a single user. Multiple Mark Michaels Messiah Band tracks show 1 stream and 2 saves — impossible because saves cannot exceed streams.

7. My listeners exceeded my counted streams. My saves exceeded my counted streams on multiple tracks and in the aggregate across identities. My playlist additions exceeded my counted streams. My algorithmic sessions were recorded without corresponding counted streams. Discovery dropped to effectively zero across multiple tracks across all four Artist Identities.

8. These patterns began immediately after the March 2026 Rule Change and appear across all four Artist Identities which have different genres, different catalogs, different listener pools, and different release cadences. There is no content-specific or audience-specific explanation for why all four identities would be suppressed simultaneously and uniformly.

9. Multiple of my tracks failed to reach the 1,000-stream royalty threshold, not because of lack of genuine listener interest, but because Spotify's filtering rules suppressed the counted streams that would otherwise have crossed that threshold.

10. Spotify continues to use my music to power playlists, Autoplay sessions, and algorithmic recommendations. I am not compensated for legitimate listening activity that Spotify does not count.

11. I suffer ongoing economic harm in the form of lost royalties, lost algorithmic momentum, and lost listener growth. I believe this harm is compounding daily and cannot be fully remedied by monetary damages alone.

I declare under penalty of perjury under the laws of the State of Connecticut that the foregoing is true and correct.

Signed: ______________________

Mark Kratter

Subscribed and sworn before me on this 26th day of June, 2026.

______________________

Michael Barbarulla
Commisioner of the Superior Court
[redacted],